UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-80407-CIV-ROSENBERG/REINHART

HUNTERS RUN PROPERTY OWNERS
ASSOCIATION, INC.,

                    Plaintiff/Counter-Defendant

v.


CENTERLINE REAL ESTATE, LLC,

                    Defendant/Counter-Plaintiff

v.

STRATFORD AT HUNTERS RUN CONDOMINIUM
ASSOCIATION, INC.,

                    Counter-Defendant
_____/


**REPORT AND RECOMMENDATION ON STRATFORD'S
MOTION TO DISMISS COUNTERCLAIM (DE 51), THE ASSOCIATION'S MOTION
TO STRIKE (DE 42), AND THE ASSOCIATION'S MOTION TO DISMISS
COUNTERCLAIM (DE 40)**

Before the Court are the following motions that were referred to the undersigned for a

Report and Recommendation by the Honorable Robin L. Rosenberg. DE 65.


1.      Stratford at Hunters Run Condominium Association's ("Stratford") Motion to

Dismiss Third-Party Complaint for Improper Impleader under Rule 14, Lack of Subject

Matter Jurisdiction, and Failure to State a Claim. DE 51. The Court has reviewed the

Motion to Dismiss, the Response filed by Centerline Real Estate, LLC ("Centerline")

(DE 55), and Stratford's Reply (DE 61).

2. Hunters Run Property Owners Association, Inc.'s ("the Association") Motion to Strike the claims against Stratford. DE 42. The Court has reviewed the Motion to Strike, Centerline's Response (DE 47), and the Association's Reply (DE 52).

3. The Association's Motion to Dismiss Amended Counterclaim. DE 40. The Court has reviewed the Motion to Dismiss, Centerline's Response (DE 46), and the Association's Reply (DE 53).

The Court held oral argument on the motions on December 20, 2018. For the reasons stated below, the undersigned recommends that the District Court (1) grant Stratford's Motion to Dismiss, with leave to amend, (2) deny the Association's Motion to Strike as moot, and (3) grant in part and deny in part the Association's Motion to Dismiss with leave to amend.

## BACKGROUND AND PROCEDURAL HISTORY

The Association is a property owners association for a residential community called "Hunters Run." Stratford is the condominium association for a set of condominium units within the Hunters Run community. DE 36 at ¶ 14. The Hunters Run community contains a membership-based country club. Centerline owns properties within the Stratford condominium neighborhood. Specifically, "[b]etween June and September 2017, Centerline acquired title to real property located at: 29 Stratford Lane, Unit D, Boynton Beach, Florida 33436; 52 Stratford Lane, Unit F, Boynton Beach, FL 33436; 23 Stratford Drive, Unit H, Boynton Beach, FL 33436; and 40 Stratford Lane, Unit B, Boynton Beach, FL 33436 (collectively the "Properties"). [1]

---

[1]Centerline notes that it has now acquired two more "Stratford condominium units within the Hunters Run community." DE 36 at 7, n.1. There is also discussion in some of the pleadings about liens and assessments being made on six properties. Regardless, the operative Complaint, Answer, and Counter-Complaint are limited to the four specified properties, which will hereinafter be referred to collectively as the "Properties."

On February 5, 2018, the Association filed a one-count Verified Complaint for Injunctive Relief in state court pursuant to Florida Statute Section 720.305. [2] DE 1-1. The Association's Complaint alleged that Centerline was not in compliance with Article II and Article IV, Section 4, of the Association's Declaration of Covenants and Bylaws The relief sought was an order requiring Centerline to "apply for club membership, pay the requisite fees, and otherwise maintain club membership in good standing with respect to all properties within the Association that have been purchased by the Defendant." *Id.*

1. *Centerline's Counterclaim*

On April 6, 2018, Centerline filed an Answer, Affirmative Defenses, and a two-count Counterclaim for trespass and declaratory relief. DE 5. Centerline's trespass counterclaim alleged that the Association unlawfully restricted Centerline's access to the Properties. Centerline's counterclaims for declaratory relief sought declarations (a) that Centerline is a Class A member in the Association; (b) that Centerline is not a Class E member in the Association; (c) that there is no requirement that Centerline, as a foreclosure buyer, apply for Class E membership; (d) that the items listed in the Association's Notice of Intent to Foreclose are not assessments; (e) that the items listed in the Association's Notice of Intent to Foreclose cannot be used as a basis for lien or foreclosure; and (f) that Centerline and its managing member cannot be held personally liable for fees or assessments.

The Association moved to dismiss the Counterclaim. DE 18. The undersigned recommended dismissal of the Counterclaims. DE 30. The undersigned determined that the requests for a declaration that Centerline was a Class A member, and was not a Class E member,

---

[2] As discussed more fully below, section 720.305 requires homeowners associations and their members to comply with the relevant governing documents.

were redundant with the issues presented in the Verified Complaint, that is, whether Centerline was required to become a member of the country club. *Id.* at 7-8. For the same reason, the Court rejected Centerline's request for a declaration that, as a foreclosure buyer, it was not required to purchase a club membership. The undersigned noted, "Centerline's membership status as a Class A or Class E member and any corresponding obligation regarding club membership will be determined by the Association's claim for injunctive relief." *Id.* at 8. As to the issue of assessments, the undersigned found that Centerline had failed to plead an injury likely to be redressed by a favorable ruling, in that Centerline "fails to plead any facts to support its argument that the items the Association claims are assessments are not in fact assessments." *Id.* The undersigned rejected Centerline's request for a declaration regarding whether certain items could be the basis for foreclosure or imposition of a lien; the undersigned found that although the Association's response to the Motion to Dismiss contained facts in support of its claims, those facts were not pled in the Counterclaim. *Id.* at 9. Finally, the undersigned found the request for a declaration on personal liability was redundant with the trespass counterclaim, which failed to properly allege diminution in property value. *Id.* at 10.

On August 9, 2018, the District Court adopted the undersigned's recommendation that the Association's Motion to Dismiss the Counterclaim be granted. DE 31. The Court gave Centerline leave to file an amended Counterclaim by August 30, 2018. DE 33.

### 2. *Centerline's Counter-And-Third-Party-Complaint*

On August 30, 2018, Centerline filed a pleading titled, "Amended Answer, Defenses, Counterclaim, And Third-Party Claim." DE 36. The Answer denied the claims in the Complaint. *Id.* at 1-4. The Affirmative Defenses asserted that the Association's claims were barred by (1) unclean hands because the Association "has not uniformly and without exception enforced the

alleged requirements for club membership," (2) unclean hands because the Association "has demanded payments for debts allegedly owed by a previous owner and/or do not qualify as assessments owed by Centerline," (3) waiver and/or estoppel of any right of enforcement against Centerline because the Association "has not always required unit owners to apply for club membership for each unit they own and pay the unilaterally demanded fees, (4) the Florida Marketable Title Act, and (5) the doctrine of selective enforcement "because Plaintiff selectively enforces its Declaration, Covenants and/or Bylaws." *Id.* at 4-5.

The balance of the pleading was titled "Counter-And-Third-Party Complaint" (hereinafter "Counter-Complaint"). The Association and Stratford have each moved to dismiss the claims against them. The Association has also moved to strike the claims against Stratford.

### RELEVANT FACTS[3]

The Hunters Run community opened in the later 1970s, with the Association acting as the property owners association. ¶ 13. The Association is governed, in part, by the Hunters Run Declaration of Covenants, Restrictions and Easements ("Homeowners Declaration"). DE 1-1 at ¶ 1; DE 36-1, as well as the Bylaws of Hunters Run Property Owners Association, Inc. DE 1-1 at 16. (together "the Governing Documents"). From the opening of the community until approximately October 2000, Hunters Run Golf and Racquet Club, Inc. was the legal entity in

---

[3] For purposes of this Motion, the Court accepts all well-pled factual allegations in the Counter-Complaint as true and evaluates all plausible inferences derived from those facts in favor of Centerline. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."). The Court also considers all attachments to the Counter-Complaint. Fed. R. Civ. P. 10(c)("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Unless otherwise specified, all paragraph citations (noted as "¶" or "¶¶") are references to the numbered paragraphs in the Counter-Complaint, DE 36.

charge of a country club within the community. *Id.* In October 2000, the Association merged with Hunters Run Golf and Racquet Club, Inc., and the Association assumed the responsibilities of overseeing and managing the country club facilities. *Id.*

In June 1999, the Association amended the Homeowners Declaration for the purpose of requiring "all persons or entities who become Assessment Unit Owners after the date of adoption of these Amendments to become members of Country Club." DE 36-1 at 5. Thereafter, pursuant to Article IV, Section 4(a) of the Homeowners Declaration, "A person or a corporation, partnership, trust, or other entity obtaining title to an Assessment Unit is required as a condition of being an Assessment Unit Owner in Hunters Run to become a member of Country Club and is further required to maintain said membership in good standing at all times during the period of such ownership." DE 36-1 at 14. The Homeowners Declaration defines "Country Club" as Hunters Run Golf and Racquet Club, Inc. DE 36-1 at 6.

Article II, Section 2 of the Homeowners Declaration creates two classes of membership in the Association – Class A Members and Class E Members:

> Class A Membership. Through the dates of recordation of these amendments in the Public Records of Palm Beach County, Florida [i. e. , July 22, 1999], Assessment Unit Owner shall automatically be a Class A Member of the Property Owners Association. Said Class A Membership is appurtenant to the ownership of each Assessment Unit and shall not be separable from the ownership of any Assessment Unit and shall be deemed to have been conveyed with the conveyance of each Assessment Unit whether or not such membership is expressly referred to in the instrument effecting such conveyance; provided, however, that such conveyance shall be conditioned upon Association Verification as provided for in Article I, Section 1(t) of this Declaration of Covenants.

> Class E Membership. Class E Members shall be those Class A Members of Property Owners Association who are "Class E Members" as that term is defined in the Bylaws, subject to the rights and privileges thereof.

DE 36-1 at 9. The Bylaws require each Class E Member to join the Country Club, which is defined in the Bylaws without reference to Hunters Run Golf and Racquet Club, Inc. *See* DE 40-

1 at 9. [4]

Centerline is not a member of the country club and has no interest in becoming a member. ¶¶ 20, 23. The Association takes the position that Centerline is required to become a member of the country club. ¶ 20. The Association has demanded payment of certain fees from Centerline, which Centerline believes it is not required to pay under the Governing Documents. ¶¶ 24, 26, 30, 43. Over $160,000 in charges have been reduced to liens, which have been filed by the Association against the Properties. ¶ 43, DE 36-2, DE 36-3 at 2-5. Stratford has also filed liens against Centerline for non-payment of fees. ¶ 44, DE 36-3 at 6-31.

After Centerline refused to pay the fees, it was denied access to "the community."[5] ¶ 34. On June 23, 2017, Stratford's President, David Fink, sent an email to a number of persons, including the Association's President, Bernard Silver, which stated, "I have been in touch with Kerry Brown, Steve Hagedorn and Gerry Chafetz and left a voicemail for Lucas at front gate security regarding these two units. Security has been advised not to allow the buyer [of two of the Properties] on property without having satisfied all financial requirements with Kerry Brown." ¶ 35. Kerry Brown is the Association's membership director. ¶ 36. Two days later, on or about June 25, 2017, Centerline's managing member "attempted to drive through the neighborhood gate and was denied access by armed guards." ¶ 35. [6] On July 19, 2017, after Centerline submitted security forms "for the community gate" to the Association's membership director Kerry Brown,

---

[4] The Bylaws were not attached to the Counter-Complaint. They were attached to the Association's Motion to Dismiss. DE 40-1. Nevertheless, the Court will consider them in its ruling because they are referenced in the Homeowners Declaration (which is attached to the Counter-Complaint), their authenticity is undisputed, and they are central to the claims and counterclaims in this matter. *Day v. Taylor*, 400 F. 3d 1272, 1276 (11th Cir. 2005).

[5] The Counter-Complaint does not identify whether "the community" was Hunters Run generally or the Stratford neighborhood, specifically.

[6] Paragraph 35 of the Counter-Complaint does not specify which neighborhood's gate was involved – Hunters Run or Stratford.

Bernard Silver sent an email to Kerry Brown, David Fink, and others referring to Centerline and stating, "Stick to your guns. They are not members until they pay." ¶ 36. "In September 2017, after purchasing additional property in the Hunters Run community, Centerline *again* requested that it be permitted access to its Properties through the Hunters Run gate." ¶ 37 (emphasis in original). The Association responded through its attorney that "[The Association] elects not to respond to same, and [the Association] denies any wrongdoing." ¶ 37. On or about October 10, 2017, the Association posted a notice stating that no one associated with Centerline's properties was allowed on the Association property. ¶ 38. The notice stated, in part, "There are unpaid fees for the listed properties and no one is allowed to enter." *Id.*

## CENTERLINE'S CLAIMS

As discussed more fully below, the Counter-Complaint makes the following claims:

| Count | Defendant(s) | Claim | Relief Requested |
|-------|--------------|-------|------------------|
| I | Association Stratford | Denying access to Properties | Declaration |
| II | Association | Denying access to Properties | Damages |
| III | Stratford | Denying access to Properties | Damages |
| IV | Association | Filing false lien | Damages |
| V | Stratford | Filing false lien | Damages |
| VI | Association Stratford | Liens are void *ab initio* | Voiding of liens |
| VII | Association | Centerline not required to become a member of country club | Declaration |
| VIII | Association | Non-liability for assessments | Declaration |
| IX | Association | Unlawful restraint on alienation of Properties | Declaration |

## LEGAL PRINCIPLES

*1. Motion to Dismiss*

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a counterclaim must provide the defendant fair notice of plaintiff's claim

and the grounds upon which it rests. *See Swierkiewicz v. Sorema N. A.* , 534 U. S. 506, 512 (2002). While a counterclaim "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a counterclaim rest on "'naked assertion[s]' devoid of 'further factual enhancement. '" *Iqbal*, 556 U. S. at 678 (quoting *Twombly*, 550 U. S. at 557 (alteration in original)). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the counterclaim are true (even if doubtful in fact). *Twombly*, 550 U. S. at 555(citations omitted). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face. '" *Id.* (quoting *Twombly,* 550 U. S. at 570). In addition, "courts may infer from factual allegations in the [counterclaim] obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct that plaintiff would ask the court to infer." *Am. Dental Assoc. v. Cigna Corp*., 605 F. 3d 1283, 1290 (11th Cir. 2010)(citing *Iqbal,* 556 U. S. at 682). "Where a [counterclaim] pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief. '" *Iqbal,* 556 U. S. at 678 (quoting *Twombly,* 550 U. S. at 557). When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U. S. at 679.

## 2. *Declaratory Judgment*

The Declaratory Judgment Act provides that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U. S. C. § 2201. "This language 'only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so.'" *Mid-Continent Casualty Co. v. JWN Construction, Inc.*, 2017 WL 4347385, at *2 (S. D. Fla. 2017) (J. Rosenberg) (quoting *Ameritas Variable Life Ins. Co. v. Roach*, 411 F. 3d 1328, 1330 (11th Cir. 2005)). Accordingly, courts retain broad discretion over whether or not to exercise jurisdiction under the Act. *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1374 (M. D. Fla. 2008).

In exercising discretion, "courts may dismiss a counterclaim for declaratory judgment as redundant." *Mid-Continent Casualty Co.*, 2017 WL 4347385, at *2. When determining whether a counterclaim is redundant, "courts consider whether the declaratory judgment serves a useful purpose. To determine whether the declaratory judgment serves a useful purpose, courts should consider whether resolution of plaintiff's claim, along with the affirmative defenses asserted by defendants, would resolve all questions raised by the counterclaim." *Id*. "Even [where] the counterclaim [is] wholly redundant, this Court may exercise its discretion by not dismissing the counterclaim." *Medmarc Casualty Ins. Co. v. Pineiro & Byrd, PLLC*, 783 F. Supp. 2d 1214, 1217 (S.D. Fla. 2011) (J. Marra).

Moreover, the Act confers jurisdiction only "[i]n a case of actual controversy." *See* 28 U.S.C. § 2201. The actual controversy requirement "is jurisdictional and, thus, 'a threshold question in an action for declaratory relief must be whether a justiciable controversy exists.'" *Odyssey Marine Exploration, Inc. v. Unidentified, Shipwrecked Vessel or Vessels*, 512 F. App'x 890, 895 (11th Cir. 2013) (quoting *U. S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.

2d 744, 747 (11th Cir. 1991)). "Jurisdiction under both Article III and the Declaratory Judgment Act requires the party invoking federal jurisdiction to show, at an 'irreducible minimum' that when the complaint was filed: (1) the invoking party had suffered an actual or threatened injury due to the defendant's conduct; (2) the injury can be traced to the challenged action; and (3) the injury is likely to be redressed by a favorable ruling from the court." *Bacardi USA, Inc. v. Young's Market Company*, 273 F. Supp. 3d 1120, 1127 (S. D. Fla. 2016) (J. Seitz). "[A] declaratory judgment serves to clarify the legal relations and is not for the purpose of making factual determinations." *Medmarc*, 783 F. Supp. 2d at 1216.

### 3. Diversity Jurisdiction

Diversity jurisdiction exists if no two adverse parties are citizens of the same state, and the amount in controversy exceeds $75,000. The party asserting diversity jurisdiction bears the burden to prove that there is complete diversity. *King v. Cessna Aircraft Co.*, 505 F. 3d 1160, 1171 (11th Cir. 2007)(citation omitted). A corporation is a citizen of its state of incorporation and the state where it has its principal place of business. 28 U. S. C. § 1332(c)(1). A LLC is a citizen of every state of which its members are citizens. *Rolling Greens MHP, L. P. v. Comcast SCH Holdings LLC*, 374 F. 3d 1020, 1022 (11th Cir. 2004). If a pleading on its face fails to allege diversity, the Court may look to other evidence in the record to satisfy itself that subject matter jurisdiction exists. *Travaglio v. Am. Exp. Co.*, 735 F. 3d 1266, 1268–69 (11th Cir. 2013)(citations omitted).

To satisfy the jurisdictional amount-in-controversy requirement, a party may aggregate all of its claims against a single defendant. *Exxon Mobil Corp. v. Allapattah Servs , Inc.*, 545 U.S. 546, 585 (2005). When a party is seeking monetary damages, it satisfies the amount-in-controversy requirement by claiming a sufficient sum in good faith. *St. Paul Mercury Indem. Co.*

*v. Red Cab Co.*, 303 U. S. 283, 288 (1938). Once there is a good faith claim to the amount-in-controversy, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* at 289. "When a [party] seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Cohen v. Office Depot, Inc.,* 204 F. 3d 1069, 1077 (11th Cir. 2000) (citation omitted). "The general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F. 3d 805, 808 (11th Cir. 2003).

4. *Supplemental Jurisdiction*

Once a claim invokes the district court's federal question or diversity jurisdiction, the court "may exercise supplemental jurisdiction over all other claims that are so related to that claim that they form part of the same case or controversy." 28 U. S. C. § 1367(a). State law claims are deemed to be part of the same case or controversy as a federal claim if they "'derive from a common nucleus of operative fact' and are such that one would ordinarily expect them to be tried in one judicial proceeding." *People by Abrams v. Terry*, 45 F. 3d 17, 23 n. 7 (2d Cir. 1995) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U. S. 715, 725 (1966)). Trial courts are given broad discretion in deciding whether to exercise supplemental jurisdiction because they are in the "best position to weigh the competing interests set forth in 28 U. S. C. § 1367 . . . ." *Morgan v. Christensen*, 582 F. App'x 806, 808 (11th Cir. 2014).

The supplemental jurisdiction statute describes instances when the district court should decline to exercise supplemental jurisdiction because:

(1) the claim raises a novel or complex issue of State law,

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,[7]
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U. S. C. § 1367(c). The Court's discretion is also guided by the factors of judicial economy, convenience, fairness, and comity. *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F. 3d 595, 601 (5th Cir. 2009).

## DISCUSSION

Stratford alleges that (1) it is not properly joined as a third party defendant, (2) even if it is properly joined, subject matter jurisdiction is lacking, and (3) regardless, Centerline fails to plead claims upon which relief can be granted under Rule 12(b)(6). The Association argues that the Counter-Complaint fails to state claims upon which relief can be granted against the Association.[8]

### 1. Is Stratford a proper party to this litigation?

The first issue presented is whether Stratford is properly joined as a party to this case. Stratford argues that it has been improperly joined as a third-party defendant under Federal Rule

---

[7] Substantial predominance exists "when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 744 (11th Cir. 2006).

[8] The Association also moved to strike the claims against Stratford as improperly brought under Rule 14(a). In its Reply, the Association further argued that the claims against Stratford could not be brought under Rule 13 and Rule 20. The Court is skeptical that the Association has standing to challenge the procedural validity of the claims against Stratford. *Capodanno v. Premier Transport. & Warehousing, Inc.*, 2010 WL 1329938, at *1 (S.D. Fla. 2010) (J. Cohn) Nevertheless, given the Court's rulings on Stratford's Motion to Dismiss, it need not resolve whether the Association has standing to move to strike. *Id.*

of Civil Procedure 14. In response, Centerline asserts that Stratford is joined in this action as a counterclaim defendant under Rules 13 and 20, and not as a third-party defendant under Rule 14. *See, e. g.* DE 55 at 3; DE 47 at 5.

Centerline's current position that it relied upon Rules 13 and 20, and not Rule 14, is contradicted by its own pleading and prior conduct. The relevant pleading is titled, "Amended Answer, Defenses, Counterclaim, and Third-Party Claim." DE 36. In the caption, Stratford is listed as "Third-Party Defendant." The jurisdictional statement refers to "Centerline's Third-Party claim against Stratford." ¶ 9. The pleading contains the sub-heading "Counter-And Third-Party Complaint." *Id.* at 5. It calls Centerline the "Defendant/Counter-Plaintiff/Third-Party-Plaintiff." *Id.* It states that it is asserting "Third-Party claims against Third-Party-Defendant Stratford at Hunters Run Condominium Association, Inc." *Id.* Centerline served Stratford using a Summons on a Third Party Summons. DE 61-1. Nevertheless, the jurisdictional allegation refers to "these counterclaims," ¶8, and the venue allegation refers to "counterclaims and crossclaims." ¶10. Despite this consistent prior position, Centerline now asserts that it has "(a) joined Stratford as a counterclaim defendant under Rules 13 and 20 as to the lockout claims [Counts I and III], and (b) joined Stratford pursuant to Rule 20 as to the false lien claims [Counts V and VI] that are factually and legally related to other claims in the case." DE 47 at 5.

The Court finds Centerline's current position unpersuasive. The overwhelming evidence in the record establishes that Centerline intended to add Stratford as a third-party defendant under Rule 14(a). For the reasons stated in Stratford's Motion to Dismiss, which are not contested by Centerline, Stratford could not be joined under Rule 14.

Having concluded that Centerline brought its claims against Stratford improperly under Rule 14, the Court is left with the question of the proper remedy. Centerline asks that if the Court

finds Stratford is not properly joined under the existing pleading, Centerline be given leave to amend its pleading to join Stratford as a counterclaim defendant. DE 47 at 10.[9] The Court could grant the motion to dismiss the claims against Stratford, but would simultaneously grant Centerline's request for leave to amend the counterclaims to re-plead the same claims against Stratford. *See* Fed. R. Civ. P. 15(a)(2)("The Court shall freely give leave when justice so requires."); *see So. Beach Hotel, LLC v. Molko,* No. 09-21393-CIV, 2009 WL 10667895, at *3 (S. D. Fla. Oct. 14, 2009)(J. Altonaga)("A district court should not deny leave to amend unless there has been undue delay, the amendment would unduly prejudice the opposing party, or the amendment would prove futile. Indeed, '[u]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.'")(citations omitted). After the amended counterclaims were filed, the Court likely would be asked to resolve whether those claims satisfy Rules 8(a) and 12(b)(6). This kind of rigid formalism is not required. Stratford has been on notice of Centerline's claims for over 90 days and has had a full opportunity to litigate whether the claims are sufficiently pled under Rules 8(a) and 12(b)(6). The interests of justice and judicial economy do not warrant the cost and time that would be required for Centerline to re-plead the same claims against Stratford. *See* Fed. R. Civ. P. 1 (Rules of Civil Procedure shall be "construed, administered, and employed by the court . . . to secure the just, speedy, and inexpensive determination of every action and proceeding."). The Court will assume, without deciding, that the Counter-Complaint properly joins Stratford under Rule 13(h) and Rule 20. [10] *Accord, e. g. , Bank of New York Mellon Trust Co. v. Prefco Nineteen Limited*

---

[9] Centerline made this conditional request for leave to amend in its Response to Stratford's Motion to Dismiss. Stratford did not address the request in its Reply memorandum. DE 61. The Association opposed granting leave to add an additional party (i.e. Stratford). DE 52 at 7.

[10] This determination is without prejudice to Stratford challenging joinder should claims be brought against it in an Amended Counter-Complaint.

*Partnership,* 2010 WL 11603087, at *4 (N. D. Ga. Feb. 18, 2010) (determining that party wrongly joined under Rule 14 could be joined under Rule 13(h)); *Platinum Realty and Holdings, LLC v. Lee,* 2016 WL 10805743, at *3 (D. Nevada Aug. 25, 2016)(same).

## 2. Is there subject matter jurisdiction over the claims against Stratford?

Stratford alleges that there is no subject matter jurisdiction over the claims asserted against it. Stratford argues that there must be an independent basis for jurisdiction, not just the Court's supplemental jurisdiction. It further asserts that Centerline has not alleged a sufficient amount in controversy to invoke diversity jurisdiction. Centerline's written response argues that the claims against Stratford fall within the Court's supplemental jurisdiction, DE 55 at 4, and that the Counter-Complaint properly alleges more than $75,000 in controversy. DE 55 at 6, n. 3. The Court may not address the merits of the claims without first establishing subject matter jurisdiction. *Univ. of South Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999).

Different rules of subject matter jurisdiction apply depending on whether the counterclaims are compulsory or permissive. The Court automatically exercises subject matter jurisdiction over compulsory counterclaims. *Weitzman, LLC v. Micro Computer Resources, Inc.*, 2007 WL 744649, at *3 (S.D. Fla. 2007) (J. Seitz). A permissive counterclaim cannot be brought under the subject matter jurisdiction created by the complaint, including supplemental jurisdiction arising from the complaint; there must be an independent jurisdictional basis for the permissive counterclaim. *See East-Bibb Twiggs Neighborhood Association v. Macon Bibb Planning & Zoning Comm'n,* 888 F.2d 1576, 1578 (11th Cir. 1989)("[A] federal court cannot

consider a permissive counterclaim unless the counterclaimant asserts an independent jurisdictional basis.")[11]

At oral argument, Centerline asserted that Counts I, III, V, and VI are compulsory counterclaims. The Court need not resolve this question because the Court finds that subject matter jurisdiction exists over the claims against Stratford even if they are permissive counterclaims.

Although the legal basis for Count I was not specifically cited in the Counter-Complaint, it is clear that Count I requests declaratory relief. At oral argument, Centerline clarified that it brought Count I under the federal declaratory judgment statute, 28 U. S. C. § 2201, which created federal question jurisdiction under 28 U. S. C. § 1331. Centerline further asserted that subject matter jurisdiction existed over Counts III, V, and VI either independently under this Court's diversity jurisdiction, 28 U. S. C. § 1332, or under the Court's supplemental jurisdiction, 28 U. S. C. § 1367.

The Counter-Complaint sufficiently alleges diversity of citizenship. It alleges that Stratford is incorporated in Florida and has its principal place of business in Florida. ¶ 7. This allegation properly pleads that Stratford is a citizen of Florida. The Counter-Complaint further alleges that the Association "is a Florida corporation operating a homeowners' association in

---

[11]As Judge Marra noted in *Kolmat do Brasil v. Evergreen United Investments, LLC*, 2016 WL 4239237, at *3 (S.D. Fla. May 18, 2016), "[S]ome Circuits have held that 28 U.S.C. § 1367, which became law in 1990, 'displaced ... whatever validity inhered in the earlier view that a permissive counterclaim requires independent jurisdiction.' *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213 (2d Cir. 2004); *accord Global NAPs, Inc. v. Verizon New England Inc.*, 603 F.3d 71, 87 (10th Cir. 2010); *Channell v. Citicorp Nat'l Servs., Inc.*, 89 F.3d 379 (7th Cir. 1996)." The Eleventh Circuit has not overruled *East-Bibb*, so it remains controlling precedent for this Court. *Accord, e.g., Perez v. Elite Imaging, LLC*, 2017 WL 666108, at *2 (S.D. Fla. Feb. 17, 2017)(J. Huck)(applying *East-Bibb*); *Garcia v. Nachon Enterprises, Inc.*, 2016 WL 1077107, at *1 (S.D. Fla. Mar. 18, 2016)(J. Gayles).

Palm Beach County, Florida" and is a citizen of Florida. ¶ 6. This allegation, when combined with the allegations in the Complaint (DE 1-1), is sufficient to establish that the Association's principal place of business is in Florida.

Finally, the Counter-Complaint alleges, "Centerline is a limited liability company formed and existing under the laws of the state of Texas with its principal place of business in Houston, Texas. Centerline is a citizen of the state of Texas." ¶ 5. This allegation, on its face, fails to allege Centerline's citizenship because it does not plead the citizenship of the members of Centerline. Nevertheless, there is evidence in the record from which the Court can conclude that Centerline is a citizen of Texas. DE 4.

Stratford asserts that the Counter-Complaint fails to properly allege $75,000 or more in controversy. DE 51 at 13. Here, Counts III and V seek monetary damages and statutory attorney's fees. Count V also seeks monetary damages and a $2500 civil penalty for each of the claims of lien filed by Stratford.

Centerline asserts that the amount in controversy is satisfied because the Counter-Complaint alleges false liens of $140,758.54 by Stratford, plus attorneys' fees. DE 55 at 6, n. 3. These allegedly false liens form the bases of Counts V and VI. Six notices of lien totaling this amount are included in Exhibit 3 to the Counter-Complaint, so they may be considered in evaluating whether Centerline has sufficiently pled the amount in controversy. Fed. R. Civ. P. 10(c)[12] The factual allegations in the Counterclaim relating to these liens are:

---

[12] Stratford incorrectly argues that the Court cannot consider the liens because they were not specifically incorporated into the Counter-Complaint. DE 51 at 13. First, Paragraph 27 of the Counterclaim cites to Exhibit 3. Second, under Rule 10(c) it is irrelevant whether the Exhibit was cited in the body of the pleading.

- "Stratford, on the other hand, has similarly filed materially false liens seeking approximately $140,000 in unpaid charges, the vast majority of which have already been extinguished by the foreclosure sale or are otherwise improper to seek from Centerline." ¶ 44.

- "Moreover, Stratford's claims of lien seek recovery of amounts that have been extinguished for a variety of reasons, including a discharge through bankruptcy proceedings." ¶ 45.

Stratford replies that the allegations regarding the lien amounts are conclusory and "fail[] to allege specifically what portion of those liens for which Centerline seeks relief or explain how it is otherwise damaged by Stratford's filing of the condominium assessment liens." DE 61 at 5. Stratford further asserts that, for the properties acquired by foreclosure sale, "Centerline cannot, as a matter of law, recover any portion of Stratford's liens on the alleged basis that they were 'extinguished by the foreclosure sale.'" DE 51 at 13.

The Court finds that the Counter-Complaint contains a good-faith allegation that the amount-in-controversy for each of Counts V and VI exceeds $75,000. The amount of the challenged liens, combined with the statutory attorney's fees claims are sufficient to meet the jurisdictional threshold. Independently, Count VI seeks a declaration that the liens are void *ab initio,* so the value of the declaratory relief sought in Count VI is the full value of the liens, which exceeds $75,000. Because the amounts in controversy in Counts V and VI can be aggregated, diversity jurisdiction exists over Count V. [13] Moreover, even if there was no independent diversity jurisdiction over Count V, that Count arises from the same common facts

---

[13] Because the Court finds that Counts V and VI sufficiently allege diversity jurisdiction, the Court does not address Centerline's argument that these Counts also fall within the Court's supplemental jurisdiction arising from Count I.

as Count VI, so the Court would exercise subject matter jurisdiction over Count V as supplemental jurisdiction to the Court's jurisdiction over Count VI.

Count III does not, by itself, allege more than $75,000 in controversy. In fact, it lacks any facts to quantify the damages that Centerline seeks for being denied access to the Properties. Nevertheless, because it can be aggregated with Count VI, there is diversity jurisdiction over Count III. Alternatively, the Court would exercise subject matter jurisdiction over Count III as supplemental jurisdiction to the Court's jurisdiction over Count I. Counts I and III against Stratford are alleged to derive from the same common facts related to Centerline not being allowed access to the Properties. The same allegations form the factual basis of both counts. Only the relief sought is different.

Having determined that subject matter jurisdiction exists over each of the claims in the Counter-Complaint, as pled, the Court now turns to whether these claims satisfy Rule 12(b)(6).

3. *Has Centerline stated claims upon which relief can be granted?*

(a) *Counts I-III (The "Lockout" Claims)*

Counts I-III allege that the Association and Stratford are improperly denying Centerline access to the Properties. Centerline alleges that the Association and Stratford denied it access to the Properties for the purpose of pressuring Centerline to join the country club and to pay unauthorized fees and assessments. DE 36 at ¶¶ 33-41. Centerline seeks a declaration against the Association and Stratford that "(a) Hunters Run acted in violation of [Fla. Stat.] Section 720. 305 by denying or impeding Centerline the right to access the Properties, (b) Stratford acted in violation of [Fla. Stat.] Section 718.303 by denying or impeding Centerline the right to access the Properties, and (c) Centerline, its invitees, licensees, guests, tenants, or representatives are entitled to uninhibited ingress and egress, and the right to use and enjoyment, with respect to the

Properties and the common areas needed to access the Properties." DE 36 at ¶ 50. Count II seeks damages against the Association under Section 720.305. Count III seeks damages against Stratford under Section 718.303. Centerline also seeks damages for loss of rental income, loss of enjoyment, and being unable to perform maintenance. DE 36 at ¶¶ 53, 57. It also seeks statutory attorney's fees and costs. DE 36 at ¶¶ 54, 58.

Sections 720.305(1) and 718.303(1) are parallel provisions that apply to homeowners associations and condominium associations, respectively. Each requires the corresponding association to comply with its own governing documents. If the association fails to do so, an aggrieved community member can sue for damages, injunctive relief, and attorney's fees. If a homeowner violates the governing documents, the association may suspend that person's right to use common areas and common facilities. Fla. Stat. § 718.303(3)(a); Fla. Stat. § 720.305(2)(a) There are statutory limits on the power to suspend, however. For a condominium association, such as Stratford, this suspension cannot extend to, *inter alia,* "common elements needed to access the unit." Fla. Stat. §718.303(3)(a). A homeowner's association, such as the Association, "may not prohibit an owner or tenant of a parcel from having vehicular and pedestrian ingress to and egress from the parcel, including but not limited to, the right to park." Fla. Stat. § 720. 305(2)(a).

The Association and Stratford both argue that Count I improperly seeks declaratory relief because it is only alleging past harms, and not an ongoing risk of prospective future injury that could be remedied by a favorable ruling from the Court. DE 40 at 12-13; DE 51 at 15. The Association further argues that Count I is redundant of issues already joined in this case, so it serves no useful purpose and should be dismissed. DE 40 at 15-17. As to Counts I and II, the Association argues that Centerline lacks standing to bring an action under Section 720.305

because it is not a "member" of the Association. DE 40 at 18-19. Stratford argues that Counts I and III fail to state a claim because they do not allege sufficient facts to create a plausible claim that Stratford denied access to the Properties. DE 51 at 18-19.

Counts I and II state claims upon which relief can be granted against the Association. Even assuming that Centerline is in violation of its obligations under the homeowners association documents and that all the assessments against it are legally proper, Section 720.305 does not permit the Association to deny Centerline "vehicular and pedestrian ingress and egress" to the Properties. Centerline has standing to assert these claims against the Association because it is an "owner" of the Properties, within the terms of Section 720.305(2)(a). For purposes of these claims, it is irrelevant whether Centerline is a "member" of the Association; that term is not used in the relevant portion of Section 720.305(2)(a).

Even if Section 720.305(2)(a) requires Centerline to be a member of the Association, the Court rejects the Association's argument that Centerline lacks standing under Section 720.305(2)(a) because it has denied being a member of the Association. To the contrary, Centerline's consistent position has been that it is a Class A member of the Association, not a Class E member. Although the Counter-Complaint does not directly make this assertion, the Court finds that a common sense reading of the pleading preserves this position. Moreover, in its original Counterclaim (DE 5), Centerline sought a specific declaratory judgment that it was a Class A member and not a Class E member. The Association took the position that declaratory relief was redundant because this argument was already preserved and framed by the Association's Complaint and Centerline's Answer and Affirmative Defenses. The Court agreed and granted the Association's motion to dismiss the relevant counterclaims. Neither the Complaint nor the relevant Affirmative Defenses have changes in the interim. Therefore, the

Court finds that the Association is bound by its prior position that the existing pleadings present the argument that Centerline is a Class A member, but is not a Class E member of the Association.

Count I states a plausible claim that the Association's actions create a continuing threat of injury that would be redressed by a favorable ruling. The Counter-Complaint alleges that on October 10, 2017, the Association issued a notice to its security staff to not allow anyone associated with the Properties to enter Hunters Run. The notice stated that the justification for the exclusion was, "There are unpaid fees for the listed properties and no one is allowed to enter." Viewed in the light most favorable to Centerline, the Counter-Complaint alleges a course of conduct beginning in June 2017 and continuing through October 2017 which evinces the Association's view that Centerline will not be permitted on the premises at Hunters Run until it pays its outstanding debts to the Association. Particularly in light of the lien enforcement actions initiated in July 2018, *see* DE 36-3 at 2-5, there is a sufficient inference that the Association continues to take the position that Centerline owes unpaid fees and should not be permitted to enter Hunters Run. Viewed in the light most favorable to Centerline, Count I states a claim upon which relief can be granted against the Association. The Motion to dismiss Count I as to the Association should be denied.

The Court rejects the Association's argument that Count I serves no useful purpose and is redundant with issues presented in the Answer and Affirmative Defenses. The Answer and Affirmative Defenses frame the issue of whether Centerline is a Class A or Class E Member of the Association, with the corresponding obligations of ownership. There is no dispute that Centerline owns property within Hunters Run. Count I presents the additional issue of whether

the Association can deny Centerline access to the Properties *even if* Centerline is a Class A Member. Therefore, Count I is not redundant.

As to Count II, the Counter-Complaint alleges that on or about June 25, 2017, the Association denied Centerline's managing member access to the Properties. For the reasons stated above, that allegation is sufficient to state a claim for relief on Count II. The motion to dismiss Count II should be denied.

In contrast, Counts I and III do not allege plausible claims for relief against Stratford. The Counter-Complaint makes only the following allegations regarding Stratford's involvement in denying access to the Properties:

- "Nevertheless, Hunters Run and Stratford have denied Centerline access to the Properties to coerce Centerline to pay "assessments" that are neither due nor owed." DE 36 at ¶ 33.

- After Centerline took title to the Properties, Hunters Run imposed a litany of individualized charges and dues, attempted to persuade Centerline that these items were "assessments" owed to Hunters Run, and attempted to convince Centerline that it was required to "become a member" of the country club. But rather than seeking to pursue its position through legal and permissible means, "Hunters Run (in coordination with Stratford) simply denied Centerline the ability to access the Properties by refusing Centerline the right to use the gate that provides access to the community. It did so in contravention of Florida law and in violation of Centerline's right to use the common areas necessary to access the Properties. Put differently, Hunters Run and Stratford took it upon themselves to turn a defensive security gate into an offensive weapon against Centerline." DE 36 at ¶ 34.

- On June 23, 2017, Stratford's President, David Fink, sent an email to a number of persons, including the Association's President, Bernard Silver, which stated, "I have been in touch with Kerry Brown, Steve Hagedorn and Gerry Chafetz and left a voicemail for Lucas at front gate security regarding these two units. Security has been advised not to allow the buyer [of two of the Properties] on property without having satisfied all financial requirements with Kerry Brown." ¶ 35. Kerry Brown is the Association's membership director. ¶ 36.

- On July 19, 2017, Bernard Silver sent an email to Kerry Brown, David Fink, and others referring to Centerline and stating, "Stick to your guns. They are not members until they pay." ¶ 36.

Except for the allegations in paragraphs 35 and 36, all of these allegations (including the allegation that Stratford worked in coordination with the Association) are mere conclusions, unsupported by facts, and therefore not entitled to an assumption of truth. Paragraphs 35 and 36 are insufficient to create a plausible claim that Stratford, rather than the Association, prohibited Centerline from accessing the Properties. They do not create any inference, let alone a plausible one, that Stratford has the ability to deny Centerline access to the Properties, or that Stratford was assisting the Association in barring Centerline. Even in the light most favorable to Centerline, these Paragraphs merely reflect the passive receipt or conveyance of information, which is equally consistent with lawful conduct. Count I as to Stratford should be dismissed for failure to state a claim upon which relief can be granted. [14]

---

[14] Because the Court finds that Count I fails to state a claim against Stratford, the Court need not resolve whether Counts I improperly comingles claims against the Association and Stratford. *See* DE 40 at 17.

Count III should be dismissed for the same reasons that Count I fails against Stratford. Count III does not allege sufficient facts to create a plausible claim that Stratford denied Centerline access to the Properties.

*(b) Counts IV-VI (The "False Lien" Claims)*

Counts IV-VI seek remedies for alleged violations of Section 817. 535, Florida Statutes, which states in pertinent part:

> (8)(a) Any person adversely affected by an instrument filed in the official record which contains a materially false, fictitious, or fraudulent statement or representation has a civil cause of action under this section without regard to whether criminal charges are pursued under subsection (2). A notice of *lis pendens* in accord with s. 48. 23 shall be filed which specifically describes the instrument under challenge and the real or personal property affected by the instrument.

> (b) Upon a finding that the instrument contains a materially false, fictitious, or fraudulent statement or representation such that the instrument does not establish a legitimate property or lien interest in favor of another person:

> 1. The court shall determine whether the entire instrument or certain parts thereof are null and void ab initio. . . .

> 2. Upon a finding of intent to defraud or harass, the court or jury shall award actual damages and punitive damages, subject to the criteria in s. 768. 72, to the person adversely affected by the instrument. The court may also levy a civil penalty of $2,500 for each instrument determined to be in violation of subsection (2).

> 3. The court may grant such other relief or remedy that the court determines is just and proper within its sound judicial discretion.

> (c) The prevailing party in such a suit is entitled to recover costs and reasonable attorney fees.

Fla. Stat. § 817. 535(8). *See* In re Standard Jury Instructions in Criminal Cases--Report No. 2016-02, 199 So. 3d 234, 239 (Fla. 2016)(listing elements of a criminal violation of § 817.535).

<u>Count IV</u>

Count IV seeks damages from the Association for filing false liens on two of the Properties. DE 36 at ¶ 60. [15] Centerline alleges that there was no basis for the liens because they are predicated on "assessments" which the Association cannot impose on Centerline because Centerline is not a Class E homeowner and/or because they are based on underlying charges that cannot be reduced to a lien. DE 36 at ¶ 60-61. Centerline seeks "actual and punitive damages," a $2500 statutory civil penalty, plus statutory attorney's fees and costs. DE 36 at ¶ 64.

The Association challenges whether the Counter-Complaint pleads sufficient facts to give rise to a plausible claim that the assessments in the Notice of Foreclosure are improper. It argues that Count IV consists merely of conclusory allegations that Centerline is not a member of the country club, is not required to be one, and is being charged invalid assessments. DE 40 at 19. The Association primarily argues that Count IV must be dismissed because the Homeowners Documents unambiguously make the assessments proper. *Id.* at 5-9, 19-20. The Association further argues that Count IV fails to comply with Federal Rule of Civil Procedure 9(b), and fails to sufficiently allege that Centerline is "adversely affected" by the allegedly false liens. *Id.* at 20. Finally, the Association argues that Count IV fails because Centerline has not filed a notice of *lis pendens* as required. *Id.* at 20.

The Counter-Complaint sufficiently alleges that the Association's liens are based on invalid assessments, and therefore contain materially false statements. The Counter-Complaint alleges that the Homeowner's Documents permit the Association to impose only three types of assessments against owners: Annual Assessments, Additional Assessments, and Class E

---

[15] The Counter-Complaint does not specify which two properties, but Exhibit 3 to the Counter-Complaint contains Claims of Lien by the Association against 23 Stratford Drive, Unit H, and 40 Stratford Lane, Unit B. *See* Fed. R. Civ. P. 10(c).

Assessments. "Annual Assessments are assessed at the beginning of the fiscal year, and are calculated as a percentage of Hunters Run's annual expenses shared amongst the assessment unit owners in the community. Additional Assessments are assessments that are imposed on the owners if the Annual Assessments underestimate the actual expenses incurred by Hunters Run, and are shared amongst the unit owners in the same manner as the Annual Assessments. Class E Assessments are special assessments levied exclusively against Owners that are members of the country club, and are reserved for the expenses that the Association incurs in the operation of the country club assets." ¶ 26. Pursuant to the Declaration, these Class E Assessments are "fixed, established, levied, and collected from time to time." *Id.*

Centerline has pled a plausible claim that it is not required to join the country club. There is a potential inconsistency between the Homeowner's Declaration and the Bylaws on this issue. The Homeowner's Declaration appears to require that Centerline become a member of the Hunters Run Golf and Racquet Club, Inc., which is a now defunct entity. The Bylaws appear to have different requirements. This issue cannot be resolved on a motion to dismiss under Rule 12(b)(6). Viewed in the light most favorable to Centerline, the Counter-Complaint makes a plausible claim that Centerline is not required to join the country club or to pay assessments incident to a country club membership.

The Counter-Complaint identifies the disputed charges with adequate specificity. It alleges, "None of the items listed in Exhibit 2 are proper 'assessments' under any definition in the [Homeowners Declaration]." DE 36 at 11, n. 3. The items in Exhibit 2 include the following fees related to the club:

| | |
|---|---|
| Initial Capital Assessment | $ 43,150.00 |
| Annual Social Membership | $ 9,617.00 |
| Prorated Social Membership | $ 3,701.22 |
| Initiation Fees | $ 15,000.00 |

"[E]ast course assessment"    $    130. 50
"Single Minimum"              $    483. 29

Therefore, viewed in the light most favorable to Centerline, the Counter-Complaint alleges at least $70,000 in improper charges that have been reduced to liens.

The Association argues that Count IV must fail because Centerline has not satisfied a condition precedent, that is, the filing of a *lis pendens* for each disputed lien. The Court agrees with Centerline that filing a *lis pendens* is not a condition precedent to a civil action under Section 817.535(8). No party cited any legal authority addressing this issue, nor has the Court found any. The most logical reading of the statute is that a party who believes a fraudulent lien has been filed against him may bring a civil action to remove the offending lien from the public record and for monetary damages against the person who filed the lien. When that civil action is filed, the person must file a *lis pendens* to notify the world that the lien may not be valid.

Logically, the *lis pendens* cannot be a pre-condition to filing suit for damages. Section 817.535(8) is designed to protect a property owner from the harms occasioned by having a false lien filed on property. Whatever the consequences that not filing the *lis pendens* may have on a third-party later asserting an interest in the property, that failure does not undermine the harm a property owner suffers when a false lien is filed. In the absence of Florida case authority on point, the Court is not prepared to say that Count IV is defective because Centerline did not file a *lis pendens.*

The Court finds that Rule 9(b) is inapplicable to Count IV. Rule 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Section 817.535(8)(b)(2) authorizes damages if there was an intent to defraud *or* harass. These are alternative theories of recovery. As Centerline conceded at oral argument, the

Counter-Complaint does not allege a fraud theory.[16] The sole mention of any *mens rea* is in paragraph 66, which alleges, "Stratford has filed claims of lien with the clear intent to harass Centerline and coerce Centerline into paying amounts that Centerline is not obligated to pay." Because Centerline is proceeding under a harassment theory, not a fraud theory, Rule 9(b) is not implicated.

The requirement that a person be "adversely affected" as a predicate for an action under Section 817.535 relates solely to standing. The only person who can file an action under this section is a person whose real or personal property is affected by the false document. A random third-party may not. Centerline alleges that it is the owner of the Properties, which are now encumbered by liens containing materially false information. Nothing more is required to satisfy the "adversely affected" requirement.

Count IV is deficient, however, because it fails to contain sufficient facts to allege an intent to harass. Section 817.535 does not contain a definition of "harass," nor is there any reported authority interpreting this statutory term. Without offering its own definition, at oral argument, Centerline conceded that it would not be "harassment" if a party filed a lien in the good faith belief that the underlying debt actually was owed.

The undersigned located only two Florida statutes that use the term "harass." Florida Statute Section 559.72(7) prohibits a consumer debt collector from "[w]illfully communicat[ing] with the debtor or any member of her or his family with such frequency as can reasonably be expected to *harass* the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family."

---

[16] To the extent the Counter-Complaint contains the term "fraudulent," it appears to be merely parroting the statute. There are no facts pled to support a finding of fraudulent behavior.

(emphasis added). The statute does not define "harass," nor are there any reported decisions defining that term.

The other Florida statute is the stalking statute, which defines "harass" as "engag[ing] in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose." Fla Stat. § 784. 048(1)(a). A course of conduct is "a pattern of conduct composed of a series of acts over a period of time, however short, which evidences a continuity of purpose. The term does not include constitutionally protected activity such as picketing or other organized protests." § 784.048(1)(b). *See Burroughs v. Corey,* 92 F. Supp. 3d 1201, 1204 (M. D. Fla. 2015), *aff'd,* 647 F. App'x 967 (11th Cir. 2016). Black's Law Dictionary contains a similar definition of "harassment," which it defines as "words, conduct, or action (usually repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in that person and serves no legitimate purpose." Black's Law Dictionary, 9th Ed. (2009).

For purposes of Section 817.535, this Court finds that proof of an "intent to harass" requires, at a minimum, proof that a party intended to engage in conduct directed at a specific person for the subjective purpose of causing substantial emotional distress to that person and with knowledge that the conduct served no legitimate purpose. Under that standard, Count IV fails to state a plausible claim for relief. The factual allegations in the Counter-Complaint are consistent with the Association believing, in good faith, that the assessments are proper, that Centerline owes the money, and that the liens serve a wholly legitimate purpose. *See Am. Dental Assoc. v. Cigna Corp ,* 605 F. 3d at 1290. Moreover, there are no facts alleging that Centerline has suffered substantial emotional distress; the Court notes, without deciding, that it is highly

questionable whether a limited liability corporation could suffer emotional distress. Count IV should be dismissed for failure to state a claim upon which relief can be granted.

### Count V

Count V seeks damages from Stratford for filing false liens on each of the Properties for unpaid charges totaling approximately $120,384.70. Centerline alleges that the liens are based on improper assessments ¶¶ 66-67. Centerline also alleges that some of the liens are based on charges that predate Centerline's ownership of the relevant properties and that were extinguished when Centerline purchased the properties. ¶ 68. Centerline further alleges that other charges were discharged through a prior owner's bankruptcy. *Id.* Centerline seeks "actual and punitive damages," a $2500 statutory civil penalty, plus statutory attorney's fees and costs. DE 36 at ¶ 71.

Like the Association, Stratford argues that Count V must be dismissed because Centerline (1) has not filed a *lis pendens,* (2) has not satisfied Rule 9(b), and (3) has not sufficiently pled that it is "adversely affected" by the liens. These arguments do not defeat Count V for the same reasons they fail as to Count IV.

Stratford also asserts that Count V contains insufficient facts to create a plausible claim that it had an intent to harass Centerline. The Court agrees. On this ground, Count V must be dismissed for the same reasons as Count IV.

### Count VI

Count VI is against both the Association and Stratford. It seeks "a declaration, pursuant to Florida Statutes section 817. 535(8)(b)(1), that each of the filed claims of lien against the Properties is void *ab initio*." ¶ 74. This relief does not require proof of an intent to defraud or harass. It merely requires proof that a lien is, in fact, materially false or fraudulent such that it does not establish a legitimate property or lien interest in favor of Stratford.

The Association correctly argues that Count VI is a shotgun pleading because it improperly commingles claims against Association and Stratford. DE 40 at 17. A shotgun pleading is "one that commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland v. Palm Beach County Sheriff's Office,* 792 F.3d 1313, 1323 (11th Cir. 2015). Count VI contains claims against different defendants relating to different liens. On that basis, alone, it fails to comply with Rule 8(a)(2) and must be re-pled. *See Id.*

The Association also argues that Count VI "fails to invoke jurisdiction under the Declaratory Judgment Act" because the assessments are, in fact, proper. DE 40 at 11. Centerline correctly responds that Count VI arises under a state statute which specifically authorizes the Court to "determine whether the entire instrument or certain parts thereof are null and void *ab initio." See* DE 55 at 7. The Court does not make that determination until there is a finding that the instrument contains some material falsehood such that it "does not establish a legitimate property or lien interest in favor of another person." At that point, a concrete injury exists – at a minimum, a cloud on the title to a person's property. The "case or controversy" concerns occasioned by the federal Declaratory Judgment Act, 28 U.S.C. § 2201, are not present.

Finally, the Association argues that Count VI should be dismissed as redundant of issues already framed by the existing pleadings. DE 40 at 16-17. The redundancy line of cases arise under 28 U.S.C. § 2201, which gives the Court discretion whether to consider a particular claim. Section 817.535(8)(b)(1) does not give the Court the same discretion. Rather, it directs that upon a sufficient predicate showing the Court "shall determine whether the entire instrument or certain parts thereof are null and void *ab initio."* The Association has not presented any authority for the Court to decline to consider a claim under Section 817.535(8)(b)(1) based on redundancy.

Stratford makes the same arguments against Count VI as it did against Count V, that is, failure to comply with Rule 9(b), failure to file a *lis pendens,* and failure to allege that it is adversely affected by the liens. For the same reasons, these arguments fail as to Count VI. In addition, Stratford argues that Count VI cannot be the basis for declaratory relief because it alleges only past acts, not future injury. DE 51 at 15. This argument misconstrues the relief sought in Count VI. Unlike the federal Declaratory Judgement Act, which authorizes the Court to consider future injury and prospectively "declare the rights and other legal relations" between parties, the state statute authorizes the Court to void an existing lien instrument. The Court is not pronouncing future rights based on an inchoate injury; it is determining whether the past action of filing a lien should be voided.

At oral argument, the parties acknowledged that there are currently pending cases in Palm Beach County Court to foreclose the liens at issue in this litigation. The Court takes judicial notice that the Palm Beach County Clerk and Comptroller's on-line records show the following pending cases:

- *Stratford at Hunters Run Condominium Association v. Centerline Real Estate LLC,* Case No. 50-2018-CC-009732-XXXX-SB (action to foreclose liens on Unit 52F-II)

- *Stratford at Hunters Run Condominium Association v. Centerline Real Estate LLC, Case No. 50-2018-CC-009724-XXXX-SB (action to foreclose liens on Unit 48C-II)*

- *Stratford at Hunters Run Condominium Association v. Centerline Real Estate LLC, Case No. 50-2018-CC-009717-XXXX-SB (action to foreclose liens on Unit 40B-I)*

- *Stratford at Hunters Run Condominium Association v. Centerline Real Estate LLC, Case No. 50-2018-CC-009714-XXXX-SB (action to foreclose liens on Unit 29D-II)*

- *Stratford at Hunters Run Condominium Association v. Centerline Real Estate LLC, Case No. 50-2018-CC-009710-XXXX-SB (action to foreclose liens on Unit 23H-I)*

- *Stratford at Hunters Run Condominium Association v. Centerline Real Estate LLC, Case No. 50-2018-CC-009704-XXXX-SB (action to foreclose liens on Unit 18F-II)*

At oral argument, Stratford argued for the first time that the Court should abstain from ruling on Count VI under the *Colorado River* abstention doctrine because the claims raised in Count VI also could be raised as defenses in the pending state court lien enforcement actions. *See Colorado River Water Conservation Dist. v. United States,* 424 U. S. 800 (1976). This issue was not previously raised by any party in its pleadings, so Centerline has not had a fair opportunity to be heard. Therefore, the Court declines to consider this argument.

(c) *Count VII*

Count VII seeks a declaration against the Association that Centerline is not required to "become a member" of the country club. Count VII asserts that (1) the governing homeowner's association documents are ambiguous about when and who must join the country club, (2) the Association has engaged in "haphazard and arbitrary" enforcement of this requirement, thereby waiving its right to enforce it against Centerline "or subsequent purchasers from Centerline", and (3) the governing homeowner's association documents do not require a person to join the country club more than once, even if he owns multiple properties at Hunters Run. Centerlines asserts that "for these and other [unspecified] reasons," it is not required to become a member of the country club. DE 36 at ¶¶ 78-79. Centerline seeks "a declaration that (a) it is not required to "become a member" of the country club, (b) any future purchasers from Centerline are not subject to Hunters Run's requirement that they "become a member" of the country club, and (c) in any

event, Centerline is not required to "become a member" of the country club more than once (i.e., for more than one property)." DE 36 at ¶ 80.

The Association responds that declaratory relief is not warranted because there is no actual or threatened injury to Centerline because the Homeowner's Documents indisputably require Centerline to become a member of the country club. DE 40 at 5-9. Centerline replies that a ruling on the merits of the issue is not appropriate at this pleading stage. DE 46 at 4. As discussed above, viewed in the light most favorable to Centerline, the Homeowner's Documents could be interpreted to find that Centerline is not required to join the country club.

The Association alternatively argues that Count VII is redundant of issues already in dispute. The Court agrees. Count VII seeks a declaration that Centerline is not required to "become a member" of the county club. The Verified Complaint already requests a declaration that Centerline must "apply for club membership, pay the requisite fees, and otherwise maintain club membership in good standing with respect to all properties within the Association that have been purchased by the Defendant." Paragraphs 9-13 of the Verified Complaint allege that Centerline is required by the Homeowner's Documents to become a member of the country club. Centerline's Answer denies these allegations. Centerline's First Affirmative Defense asserts, "Plaintiff's claims are barred by the doctrine of unclean hands insofar as Plaintiff has not uniformly and without exception enforced the alleged requirements for club membership." Therefore, "resolution of plaintiff's claim, along with the affirmative defenses asserted by defendants, would resolve all questions raised by" Count VII. *Mid-Continent Casualty Co*., 2017

WL 4347385 at *2 (S. D. Fla. 2017)(J. Rosenberg). Count VII serves no useful purpose and should be dismissed. *See Id.* [17]

Moreover, Count VII is merely an attempt to re-litigate an issue already resolved by the Court's ruling on Centerline's original Counterclaim. There, Centerline sought declarations that it was a Class A Member, not a Class E Member, and that it was not required to purchase a country club membership or become a Class E Member. The Court found these claims redundant, stating, "Centerline's membership status as a Class A or Class E member and *any corresponding obligation regarding club membership* will be determined by the Association's claim for injunctive relief." DE 30 at 8 (emphasis added). Centerline did not object to the Report and Recommendation. Therefore, its attempt to again seek a declaratory judgment on its "obligation regarding club membership" is inexplicable.

### *(d) Count VIII*

Count VIII seeks a declaration that certain assessments listed in a Notice of Foreclosure attached as Exhibit 2 to the Counter-Complaint are not proper charges and that neither Centerline nor its owner can be held liable for them. DE 36 at ¶¶ 83-84; DE 36-2. Specifically, Centerline seeks "a declaration that (a) none of the items listed in Exhibit 2 are 'assessments' that may be used as the basis of a Claim of Lien and/or Foreclosure, and (b) that neither Centerline nor its managing member Wade Riner may be held personally liable pursuant to the [governing homeowners' documents]." DE 36 at ¶ 85.

Centerline raised the same arguments in its original Counterclaim, relating to the same assessments. *Compare* DE 5-2 *with* DE 36-2. As to the validity of the assessments, the Court found, "Centerline's Counterclaim fails to plead any facts to support its argument that the items

---

[17] Because Count VII is redundant, the Court need not decide whether the Counter-Complaint pleads sufficient facts to raise a plausible claim of "haphazard and arbitrary" enforcement.

the Association claims are assessments are not in fact assessments." DE 30 at 8. This lack of facts meant that Centerline had not pled an injury that is likely to be redressed by a favorable ruling. *Id.* As to Mr. Riner's personal liability, the Court found it duplicative to Centerline's trespass counterclaim, which is not reasserted in the Counter-Complaint. *See* DE 30 at 9-10.

The Association argues that Count VIII does not plead sufficient facts to create a plausible claim that the assessments in the Notice of Foreclosure are improper. DE 40 at 9-11. It further argues that Count VIII is redundant of existing claims and that it improperly seeks to remedy only past harms. DE 40 at 11-12. As discussed above, the Counter-Complaint sufficiently pleads that the assessments are not authorized Class E Assessments under the Governing Documents.

Nevertheless, Count VIII's prayer for a declaration related to the assessments is redundant with existing claims. Centerline's obligation to pay the assessments *vel non* derives from its status as a member of the Association. As with Count VII, the Verified Complaint, Answer, and Affirmative Defenses squarely present this issue. Count VIII serves no useful purpose and should be dismissed to the extent it relates to the propriety of the assessments.

The Court lacks subject matter jurisdiction to adjudicate Mr. Riner's personal liability. The Court raises this issue *sua sponte. See Arbaugh v. Y&H Corp.*, 546 U. S. 500, 506 (2006) ("the objection that a federal court lacks subject-matter jurisdiction, *see* Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation"). Mr. Riner, in his individual capacity, is not a party to this litigation. Centerline, a limited liability corporation, is a separate legal entity. It has not pled how Mr. Riner's individual liability causes an injury to Centerline. Therefore, Centerline lacks constitutional standing to bring this claim. *Warth v. Seldin*, 422 U. S. 490, 498–99 (1975) ("the standing question is

whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.").

Even if Centerline had standing, the Counter-Complaint does not allege any facts to create a plausible inference that the Association has, or at any time will, seek to impose personal liability on Mr. Riner for the amounts listed in Exhibit 2. Therefore, Count VIII fails to plead that there is any actual or threatened injury to Mr. Riner that would be redressed by a favorable ruling. As such, this Court lacks jurisdiction to enter a declaratory judgment on Mr. Riner's personal liability. *Bacardi USA, Inc. v. Young's Market Co.,* 273 F. Supp. 3d. 1120, 1127 (S. D. Fla. 2016)(J. Seitz).

> *(e) Count IX*

Count IX seeks a declaration that the Association's "requirement that a purchaser of property in the Hunters Run community satisfy all prerequisites to become a member of the country club is an unenforceable, unlawful restraint on alienation." ¶ 92. In support of its claim, Count IX alleges that the Homeowner's Documents "provide[] that no conveyance of property in the Hunters Run community is valid unless the purchaser 'becomes a member' of the country club. In other words, a Hunters Run property owner is not permitted to sell his or her property to anyone who is unable or unwilling to become a member of the country club." ¶ 90. In essence, Count IX challenges the facial validity of the Homeowner's Documents.

As it did with other counts, the Association argues that no declaration is warranted on Count IX because Centerline loses on the merits. That argument is not proper at this stage.

The Association argues declaratory relief is not warranted because there is no actual controversy because no "ready, willing, and able buyer for any of its Units." DE 40 at 13-14. The

Court disagrees. Properly viewed, Count IX asserts that even if Centerline is a Class E Member and the terms of the Homeowners Documents apply to it in that capacity, those terms are invalid. If, in fact, those terms are invalid, Centerline is suffering a current injury because it is being denied access to its Properties and is being assessed improper fees by the Association. The Court can issue a declaratory judgment on the facial validity of the restrictive covenant in the Homeowner's Documents.

### (f) Leave to Amend

The Court must next consider whether to grant leave to further amend the Counter-Complaint. Centerline previously filed claims against the Association and was afforded an opportunity to amend based on the undersigned's prior Report and Recommendation. Centerline has not previously amended its claims against Stratford.

Federal Rule of Civil Procedure 15 states that the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should not be given "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendment previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree,* 252 F. 3d 1161, 1163 (11th Cir. 2001). Denial of leave to amend is justified by futility when the complaint as amended would still be subject to dismissal. *See, e. g., Christman v. Walsh,* 416 Fed. App'x 841, 844 (11th Cir. 2011)("A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning the amended complaint would not survive a motion to dismiss.").

The Court first addresses the claims against the Association. The claims asserted in Count IV were not previously pled. The Court finds that Count IV does not state a claim against the

Association because it fails to plead sufficient facts to create a plausible claim of an intent to harass. Permitting further amendment to allow Centerline to attempt to supplement its factual pleading would not be futile. To the extent Count VI is a shotgun pleading, amendment would not be futile. The relief sought by Centerline in Counts VII and VIII is redundant to existing claims, so amendment would be futile. The Court lacks subject matter jurisdiction to grant the relief requested by Mr. Riner in Count VIII; further amendment of this claim would be futile.

The Court next addresses the claims against Stratford. Counts I, III, and V do not allege sufficient facts to create a plausible claim for relief. Amendment of those claims would not be futile. Here, too, Centerline should be afforded an opportunity to supplement its factual pleadings. Centerline should be permitted to correct the shotgun pleading aspect of Count VI against Stratford.

Centerline should not be permitted to add new claims or defendants in its amendment. Any amendment should be limited to re-pleading claims already asserted. This case has been pending for over ten months, yet the pleadings are not yet closed. Centerline has twice filed insufficiently-pled sets of counterclaims, both of which included redundant claims for relief. Centerline had an opportunity in the most recent amendment to add new parties. Any further amendment should be limited to "cleaning up" claims already injected into the case against parties already joined. Amendment should not expand the scope of the litigation.

The undersigned recommends that the District Court grant leave to amend the Counter-Complaint one last time. Centerline is reminded that Rule 8(a)(2) requires a counterclaim to contain "a *short and plain* statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2)(emphasis added). After *Iqbal* and *Twombly,* Rule 8 further requires the pleading of *facts worthy of belief* that establish a plausible claim for relief. Centerline's two

attempts to assert counterclaims have fallen short on these grounds. The Counter-Complaint is long on conclusory argumentative statements and short on facts. It contains case citations and substantive footnotes, which are inconsistent with the requirements of Rule 8(a)(2). Additionally, as this Court has now twice noted, the existing pleadings clearly and squarely frame certain issues as already in dispute. Nevertheless, Centerline has persisted in pursuing redundant claims, the filing of which merely waste the resources of the parties and the Court.

## REPORT AND RECOMMENDATION

For the above-stated reasons, it is RECOMMENDED that:

1. Stratford's Motion to Dismiss [DE 51] be GRANTED. Counts I and VI of the Counter-And-Third-Party-Complaint [DE 36 at p. 5, *et. seq.* ] be dismissed as to Stratford without prejudice. Counts III and V of the Counter-And-Third-Party-Complaint [DE 36 at p. 5, *et. seq.* ] be dismissed in their entirety, without prejudice

2. The Association's Motion to Strike Centerline's Third Party Complaint [DE 52] be DENIED AS MOOT.

3. The Association's Motion to Dismiss [DE 40] be GRANTED IN PART and DENIED IN PART. The Motion to Dismiss should be denied as to Counts I, II, and IX of the Counter-Complaint. It should be granted as to Counts IV, VI, VII and VIII.

4. Centerline be granted one final chance to amend its Counterclaims, but not be permitted to add new parties or claims.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern

District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

      **DONE AND SUBMITTED** in Chambers this 22nd day of December 2018, at West Palm Beach in the Southern District of Florida.

BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE